IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN D. EMORY, :
:
      Plaintiff :
:
  v. : CIVIL NO. 4:CV-16-1892
:
VINCENT MOONEY, ET AL., : (Judge Brann)
:
      Defendants :

### MEMORANDUM

November 16, 2016

**Background**

Kevin D. Emory, an inmate presently confined at the State Correctional Institution, Graterford, Pennsylvania (SCI-Graterford) initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an Amended Complaint (Doc. 8). An in forma pauperis application has also been submitted.[1] For the reasons set forth below, Emory's action will be dismissed,

---

[1] Emory has completed this Court's form application to proceed in forma pauperis and authorization to have funds deducted from his prison account. The Clerk of Court is directed to issue the Administrative Order to the Warden noting that he should begin to deduct money from the inmate's account in the manner described in the Administrative Order.

without prejudice, as legally frivolous pursuant to the screening provisions of 28 U.S.C. § 1915.

Named as Defendants in the Amended Complaint are the following officials at Plaintiff's prior place of confinement, the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.): Superintendent Vincent Mooney; Captain Morris; Sergeant Bilger; and Correctional Officer Perrin. Plaintiff contends that lasers have been implanted in the heads of the inmates at SCI-Coal Twp to create "illegal broadcasting experiments ... for entertainment."[2]  Doc. 8, ¶ 14. The lasers have also purportedly been used to "endorse" the diagnosis that Emory is schizophrenic and to cover up the experimentation being conducted at the prison. Id. at ¶ 20. Plaintiff asserts that he has been denied adequate medical care for injuries suffered as a result of the lasers being implanted in his head.

Enory further states that on or about March 3, 2015, Bilger and Perrin, together with Nurse Kerr, a non-defendant, yelled sexually harassing remarks to all the inmates in his housing unit day room while he was in the shower room. Those remarks along with the use of the implanted lasers allegedly instigated other prisoners to assault Plaintiff while he was getting dressed in a cell. The Amended

---

[2] The implanted lasers were allegedly developed by Department of Corrections' technology.

Complaint adds that based "upon information and belief," the assault was "broadcasted" throughout the prison for entertainment via Captain Morris' use of the aforementioned implanted lasers. Id. at ¶ 18. The Plaintiff seeks injunctive and declaratory relief as well as punitive and compensatory damages.

**Discussion**

Title 28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and who wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit). § 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

A district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Douris v. Middleton Township, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d

Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton, 504 U.S. at 33.

**Superintendent Mooney**

The named Defendants include SCI-Coal Twp. Superintendent Mooney. However, there are no factual allegations set forth in the Amended Complaint which allege that Defendant Mooney had personal involvement in any violation of the Plaintiff's constitutional rights. It is asserted only that Mooney denied Emory's appeal of the denial of his administrative grievance. See Doc. 8, ¶ 30.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.

Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

It appears that Emory may be attempting to establish liability against Superintendent Mooney on the basis of his supervisory capacity within SCI-Coal Twp. Any such effort is subject to dismissal under the personal involvement pleading requirements of Rode

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance]

procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by Plaintiff to establish liability against Superintendent Mooney based upon his handling of an administrative grievance appeal or complaint does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

As noted above, there are no factual assertions set forth by Emory which

could support a claim that Superintendent Mooney had any personal involvement in any acts of constitutional misconduct. Second, any attempt to establish liability against Superintendent Mooney based upon his response or non-response to Emory's administrative grievances or complaints is likewise insufficient. Accordingly, dismissal will be granted in favor of Defendant Mooney.

**Verbal Abuse**

The Amended Complaint includes an allegation that Defendants Bilger and Perrin yelled sexually harassing remarks to all the prisoners in Plaintiff's housing unit. See Doc. 8, ¶ 11. It is well settled that the use of words generally cannot constitute an assault actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's

7

cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying it, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, Civ. No. 3:-08-828, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, Civ. No. 00-1557, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

Although Plaintiff makes a vague, conclusory assertion that the purported remarks by the correctional officers along with the use of implanted lasers encouraged some of his fellow inmates to physically assault him, there is no claim that the alleged verbal harassment by the two Defendants was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas. More importantly, it is not alleged that the alleged verbal abuse was

8

accompanied by any physically intrusive behavior.  Given the circumstances described by Plaintiff, the purported verbal remarks, although offensive, were not of such magnitude to shock the conscience as contemplated by this Court in  S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001), and thus the sexually offensive language referenced in the Amended Complaint by itself did not rise to the level of a constitutional violation.

**Failure to Protect/Lasers**

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Under Farmer, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

It is equally well settled that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible ...."

Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Roman, 904 F.2d at 194 (stating that baseless factual contentions describe scenarios clearly removed from reality).

Plaintiff alleges that based "upon information and belief," Bilger and Perrin "watched and listened" to Plaintiff being beaten by two inmates in a cell. Doc. 8, ¶ 17. Emory acknowledges that during the relevant time period, the two Defendants were in the housing unit control station which he describes as being a "closed off room." Id. at ¶ 13. Exhibits accompanying the Amended Complaint indicate that the assault against Emory was ordered from the control room through the implanted lasers. See id., pp. 19, 21, & 25. It also appears that it may be Plaintiff's contention that Bilger and Perrin watched the attack via a transmission from the lasers.

There are no rational facts alleged which could arguably show that Bilger and Perrin were actually aware that Plaintiff was being assaulted, that they engaged in an intentional attempt to place Emory in harm's way, or that they were aware but deliberately disregarded a risk to the inmate's safety. Any claim that Bilger and Perrin became aware of his assault because they ordered it from the control room and had it illegally broadcasted via lasers implanted into the prisoner's head as well as the heads of his inmate assailants is simply irrational nonsense. Fantastic, delusional, and simply unbelievable claims are clearly subject to dismissal. See Golden v. Coleman, 429 Fed. Appx. 73 (3d Cir. 2011). While the Amended

Complaint and attached exhibits may support a determination that Emory was assaulted by other prisoners on March 3, 2015, there are no credible facts supporting the outlandish accusation that the attack was ordered and shown throughout the prison via lasers implanted in the heads of the assailants and Plaintiff. Emory's assertions that he and all of his fellow SCI-Coal Twp. prisoners have had lasers implanted in their heads which allows their actions to be both controlled and broadcasted throughout the prison is a delusional scenario fabricated by the Plaintiff.

While this Court is sympathetic to the needs of inmates suffering from mental and emotional problems, Emory's pending claims fall within the category described above and as such will be sua sponte dismissed under the standards enunicated in Denton and Golden.

**Pendent Jurisdiction**

Plaintiff also indicates that he wishes to pursue state law claims against the Defendants. It is well settled that federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Aldinger v. Howard, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has

original jurisdiction.  See  28 U.S.C. § 1367(c)(3) (1997).  When rendering a determination regarding pendent jurisdiction district courts should consider judicial economy, convenience, and fairness to the litigants.  New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim.  Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)).  However, if a federal claim is dismissed prior to trial, the district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so."  Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).  Since this Court shall dismiss the federal claims against Defendants, jurisdiction will be declined with respect to any pendent state law claims that Plaintiff wishes to pursue.

**Conclusion**

Since Plaintiff's pending civil rights claim is "based on an indisputably meritless legal theory" it will be dismissed, without prejudice, as legally frivolous.  Wilson, 878 F.2d at 774.  An appropriate Order will enter.

BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge